AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas
Fayetteville Division

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED
OCT 28 2019
DOUGLAS F. YOUNG, Clerk
By _____ Deputy Clerk

In the Matter of the Search of )
) Case No. 19 CM 110
Premises located at )
82 Pleasant Street )
West Fork, Arkansas 72774 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location)*: **SEE ATTACHMENT "A"**.

located in the Western District of Arkansas, there is now concealed *(identify the person or describe the property to be seized)*: **SEE ATTACHMENT "B"**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

■ evidence of a crime;

■ contraband, fruits of crime, or other items illegally possessed;

■ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2251 | Sexual Exploitation of Children via Production of Child Pornography |
| 18 U.S.C. 2252A | Possession/Distribution of Child Pornography |

The application is based on these facts:

■ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kevin Sears, Task Force Office HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 28th, 2019

_____
*Judge's signature*

City and state: Fayetteville, Arkansas

Erin L. Wiedemann, Chief United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A
### DESCRIPTION OF PROPERTY TO BE SEARCHED

Any and all structures and outbuildings to include vehicles located on the property or arriving on the property and curtilage of **82 Pleasant Street, West Fork, Arkansas 72774** (the "SUBJECT PREMISES"), more particularly described as a single family dwelling. The premises is a red brick home with a green roof and a wooden front deck with the number 82 attached to the deck. The front door faces the south.



## ATTACHMENT B
## ITEMS TO BE SEARCHED FOR AND SEIZED

a. Images of child pornography, including any and all digital images stored on devices capable of such, and files containing images of child pornography in any form wherever it may be stored or found including, but not limited to:

i. any and all computer hardware and software capable of storing, accessing, sending or receiving digital information, computer system, computer tablet, smart phones, micro SD cards, and related peripherals, or any other device capable of accessing the internet and/or storing digital data; tapes, cassettes, cartridges, streaming tape, commercial software and hardware, internal or external storage devices, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), and any electronic data storage devices including, but not limited to cellular telephones, hardware, software, diskettes, backup tapes, CD-ROMS, DVD, Blue Ray players, Flash memory devices, and other storage mediums; any input/output peripheral devices, including but not limited to passwords, data security devices and related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information pertaining to the interest in child pornography; and/or distribute, receive, or possess child pornography, or information pertaining to an interest in child pornography, or information pertaining to an interest in child pornography;

ii. any and all applications (apps) contained on any electronic device, books and magazines, digital or otherwise, containing visual depictions of minors engaged in sexually explicit conduct or involving the physical description of sexual activity involving minors

iii. originals, copies, and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

iv. motion pictures, films, videos, film negatives, digital or print copies, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

b. information or correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, that were transmitted or received using computer or any internet capable device, or any other

facility or means of interstate or foreign commerce, common carrier, or the U.S. mail including, but not limited to:

   i. envelopes, letters, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

   ii. books, records, and any other written or digital information bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

c. Any and all credit card information including but not limited to bills and payment records for subscription to internet or non internet based companies allowing access to images of minors engaging in sexually explicit activities, or reflecting the purchase of or access to any material related to child pornography ;

d. Any and all correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256 whether transmitted or received using computer, a facility or means of interstate commerce, common carrier, or mail.

e. Any and all computer-related documentation to include written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items. In addition to passwords, to include alphanumeric strings, pass-phrases, password files, and similar decryption codes necessary to access data that is encrypted or otherwise inaccessible.

f. Any and all security devices, to include physical keys, encryption devices, "dongles", and similar physical items needed to gain access to associated computer hardware. In addition, peripherals, equipment that send data to, or receive data from, computer hardware, but do not normally store user data, such as keyboards, mice, printers, scanners, plotters, video display monitors, modems, cables, and certain types of facsimile machines.

g. Any and all address books, names, and lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256.

h. Any and all diaries, notebooks, notes and any other electronic records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, and Section 2256.

k. In searching the data, the computer personnel may copy all of the data contained in the computer equipment and storage devices. In doing so, the search is authorized to allow the

computer personnel to recover and examine: all images contained upon any seized device wherever they may be found, a search of unallocated spaces for images related to child pornography, a search to identify Peer-to-Peer programs, a search of terms related to child pornography, and any other search and examination that would reveal the existence of child pornography on the seized item including deleted, hidden, accessing applications (apps), and/or encrypted data. Emails, data files, and any other electronic information related to the ownership of the seized electronic media may be copied, imaged and examined during purposes of conducting the forensic examination.

## ATTACHMENT C

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS

STATE OF ARKANSAS  :
:
: ss. **AFFIDAVIT**
:
COUNTY OF WASHINGTON

### Affidavit in Support of Application for Search Warrant

I, Kevin Sears, a TFO with Homeland Security Investigations (HSI), being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Task Force Officer (TFO) with the Department of Homeland Security, Homeland Security Investigations ("HSI"), currently assigned to the Assistant Special Agent in Charge Office in Fayetteville, Arkansas. I have been so employed with Washington County Sheriff's Office since January, 2007. As part of my daily duties as an HSI TFO, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, online enticement, transportation, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2251A, 2422(b), 2252(a) and 2252A. I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. This Affidavit is being submitted based on information from my own investigative efforts as well as information obtained from others who have investigated this matter and/or have personal knowledge of the facts herein.

2. This Affidavit is being submitted in support of an application for a search warrant

for the premises located at **82 Pleasant Street in West Fork, Arkansas 72774** the "SUBJECT PREMISES". As such, it does not include all of the information known to me as part of this investigation, but only information sufficient to establish probable cause for the requested search warrant.

## Statutory Authority

3. This investigation concerns alleged violations of Title 18, United States Code, Sections 2252 and 2252A, relating to material involving the sexual exploitation of minors, which has been defined in Title 18 U.S.C. 2256, as an individual under 18 years of age.

a. Under 18 U.S.C. Section 2252(a)(1) (transportation), 2252(a)(2) (receipt and distribution), and 2252(a)(4)(B) and 2252A(a)(5)(B) (possession), it is a federal crime for any person to transport, distribute, receive, and possess child pornography, as that term is defined by federal law. Further under 18 U.S.C. Section 2253(a)(3), a person who is convicted of an offense under 18 U.S.C. Section 2252 or 2252A, shall forfeit to the United States such person's interest in any property, real or personal, used or intended to be used to commit or to promote the commission of such offense.

## Computers and Child Pornography

4. Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, I know that computers and computer technology have revolutionized the way in which child pornography is produced, distributed and utilized. Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop ad reproduce the images. As a result, there were definable

costs involved with the production of pornographic images. To distribute these images on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. More recently, through the use of computers and the Internet, distributors of child pornography use membership-base/subscription-based websites to conduct business, allowing them to remain relatively anonymous.

5. In addition, based upon my own knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, I know that the development of computers has also revolutionized the way in which those who seek out child pornography are able to obtain this material. Computers serve four basic functions in connection with child pornography: production, communication, distribution, and storage. More specifically, the development of computers has changed the methods used by those who seek to obtain access to child pornography in these ways.

6. Producers of child pornography can now produce both still and moving images directly from a common video or digital camera. The camera is attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored, manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or otherwise manipulated. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In

addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.

7. The Internet allows any computer to connect to another computer. By connecting to a host computer, electronic contact can be made to literally millions of computers around the world. A host computer is one that is attached to a network and serves many users. Host computers are sometimes operated by commercial Internet Service Providers (ISPs) which allow subscribers to dial a local number and connect to a network which is, in turn, connected to the host systems. Host computers, including ISPs, allow e-mail service between subscribers and sometimes between their own subscribers and those of other networks. In addition, these service providers act as a gateway for their subscribers to the Internet or the World Wide Web.

8. The Internet allows users, while still maintaining anonymity, to easily locate (i) other individuals with similar interests in child pornography; and (ii) websites that offer images of child pornography. Those who seek to obtain images or videos of child pornography can use standard Internet connections, such as those provided by business, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions involving those who wish to gain access to child pornography over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache to look for "footprints" of the websites and images accessed by the recipient.

9. The computer's capability to store images in digital form makes it an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as a "hard drive") used in home computers has grown tremendously with the last several years. Hard drives with the capacity of 160 gigabytes are not uncommon. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

10. It should be noted that Internet Protocol (IP) numbers are unique identifiers leased to internet customers by their ISP's. Although IP numbers are capable of changing over time, only one (1) unique IP number can be assigned to a given customer's computer at any given time. Logs of these leased IP's (and their assigned customer accounts) are stored by ISP's routinely.

11. Your Affiant knows from his own experience and the training and experience of other law enforcement officers that Internet computers identify each other by an Internet Protocol or IP address. These IP addresses can assist law enforcement in finding a particular computer on the Internet. These IP addresses can typically lead the law enforcement officer to a particular Internet service company and that company can typically identify the account that uses the address to access the Internet.

## Background Regarding SNAPCHAT

12. Based on my training and experience and what I have learned through other sources, I know the following:

a. Snapchat is headquartered at 63 Market Street, Venice, California 90291.

b. Snapchat is a mobile phone application where users can take photos, record videos, add text and drawings, and send them to a controlled list of recipients. These sent photographs and videos are known as "snaps." Users can set a time limit for how long recipients can view their snaps with the range being between 1 to 10 seconds, after which they will be hidden from the recipient's device and deleted from Snapchat servers.

## Summary of the Investigation to Date

13. In September 2019, Your Affiant received a Cyber Tip Line Report Number 52408163 from the National Center for Missing and Exploited Children (NCMEC) in reference to media files containing what was believed to be child pornography being downloaded from Snapchat. The information on the suspect media containing child pornography was submitted to the cyber tip line by Snapchat, on July 18, 2019. The incident information was categorized as being "Apparent Child Pornography" which was viewed and identified by NCMEC on all uploaded images. A total of 3 uploaded images of suspected child pornography was linked to the report.

Snapchat provided the Cyber Tip Line with the following information of the user being reported:

**Incident Type**: Child Pornography (possession, manufacture, and distribution)

**Incident Time**: July 18, 2019 at 14:07:33 UTC

**Chat Service/IM Client:** Snapchat

**Screen/User Name:** jseiman7

**File name:** b670ddcf-ed84-409f-8321-6ab92bc0a8d_CHAT_MEDIA_1555635501968.jpeg

b670ddcf-ed84-409f-8321-6ab92bc0a8d_CHAT_MEDIA_1555635499496.jpeg

b670ddcf-ed84-409f-8321-6ab92bc0a8d_CHAT_MEDIA_1555635312892.jpeg

**IP Address**: 98.19.245.206 at 07-03-2019 17:22:38 UTC

**Number of Uploaded Files**: 3

14. On September 11, 2019, your Affiant viewed the suspect files and notes the following is depicted:

**File Name: b670ddcf-ed84-409f-8321-6ab924bc0a8d_CHAT_MEDIA_1555635501968.jpeg**

This image depicts what is believed to be an approximate six (6) to nine (9) year old minor female naked from the waist down and lying on her back on a bed with her legs spread open. The minor female's entire body can be seen with her vagina and anus exposed to the camera.

**File Name: b670ddcf-ed84-409f-8321-6ab92bc0a8d_CHAT_MEDIA_1555635499496.jpeg**

This image depicts what is believed to be an approximate six (6) to nine (9) year old minor female completely naked. She is outside in a wooded area slightly bending over a lawn chair, with her backside toward the camera, and her head turned toward the camera. The minor female's entire body can be seen with her vagina and anus exposed to the camera.

**File Name: b670ddcf-ed84-409f-8321-6ab92bc0a8d_CHAT_MEDIA_1555635312892.jpeg**

This image depicts what is believed to be an approximate Four (4) to six (6) year old minor female naked from the waist down and lying on her back on a bed with her legs over her head. The minor female's entire body can be seen with her vagina and anus exposed to the camera.

15. An Internet search on the origin of the IP address 98.19.245.206 found it to be issued to the internet service provider Windstream. Documents received on or about September 5, 2019, from Windstream Compliance Center in reference to IP address 98.19.245.206 identified the IP as being assigned to Beau and Megan Mosteller through an active account number of

0006819412 with a service location at 82 Pleasant Street in West Fork, AR 72774, the SUBJECT PREMISES.

16. Your Affiant conducted Department of Homeland Security (DHS) and open source database queries on the SUBJECT PREMISES which indicated Beau Mosteller with a date of birth in 1993 and an Arkansas driver's license bearing the last four digits 6949. The address associated to the Arkansas driver's license is listed as 82 Pleasant Street, West Fork, AR 72774. Property records indicates Mosteller owns a 2001 Ford F-150 registered at 82 Pleasant Street, West Fork, AR 72774

## Conclusion

17. *Necessity of On-site and Off-site examinations of entire computers or storage media.* Based on my experience and the training and experience of other agents, many of the items sought in this Affidavit may be stored electronically. Based on my experience and consultation with computer forensic experts, I know that electronic files can be easily moved from computer or electronic storage medium to another computer or medium. Therefore, electronic files downloaded to or created on one computer can be copied on or transferred to any other computer or storage medium at the same location. In addition, based on my experience, I know that searching computerized information for evidence of crime often requires special agents to seize most or all of a computer system's central processing unit (CPU), input/output peripheral devices, related software, documentation, and data security devices, including passwords, so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. This is true because of the following:

(a) Volume of evidence: Computer storage devices such as hard disks, diskettes,

tapes and laser disks, can store the equivalent of thousands of pages of information. This sorting process can take up to several months to complete, depending on the volume of data stored. Therefore, it would also be impractical to attempt this type of data search on site.

(b) Technical requirements: Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data. In any event, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional destruction (both from external sources and from destructive code embedded in the system such as a "booby trap"), a controlled environment is essential to its complete and accurate analysis.

18.     Therefore, authorization is sought in this application to seize the items set forth in attachment "B" that are found on the premises to be searched, in order to examine those items for evidence. If it is determined that data has been seized that does not constitute evidence of the crimes detailed herein, the government will return said data within a reasonable time.

19.     Based on my experience and the training and experience of other agents involved with this investigation, your affiant knows that individuals involved in the sexual exploitation of children through child pornography almost always keep copies of their sexual explicit material. Among the reasons copies are maintained is because child pornography is illegal to openly purchase, and the most common method of acquiring it is by trading with other people with similar interests. It is also known that due to the inherent illegality of these sexually explicit materials,

they are most often kept in a place considered secure, usually a residence, to avoid detection by law enforcement.

20.     Based on the foregoing information, probable cause exists to believe there is located at **82 Pleasant Street, West Fork, AR** 72774, the SUBJECT PREMISES, evidence of violations of Title 18, United States Code, Section 2252, et seq. Your Affiant prays upon his honorable court to issue a search warrant for the SUBJECT PREMISES for the items set forth in attachment "B" (which is attached hereto and incorporated herein by reference), that constitute evidence, fruits, and instrumentalities of violation of Title 18, United States Code, Section 2252, et seq.

Kevin Sears Task Force Officer
Homeland Security Investigations

Affidavit subscribed and sworn to before me this ___28th___ day of October, 2019.

Honorable Erin L. Wiedemann
Chief United States Magistrate Judge